AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched*
*or identify the person by name and address)*

Target Location, more fully described in
Attachment A

)
)
)
)
)
)

Case No. **MJ21-231**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Target Location, more fully described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846 | Conspiracy to Distribute; Distribution of Controlled Substances; Money Laundering; |
| 18 U.S.C. §§ 1956, 1957 | Conspiracy to Launder Money |

The application is based on these facts:

✓ See Affidavit of Joseph Cheng, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or ☐ telephonically recorded.

_____
*Applicant's signature*

Joseph Cheng, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ April 19, 2021 _____

_____
*Judge's signature*

City and state: Bellingham, Washington

Paula L. McCandlis United States Magistrate Judge
*Printed name and title*

USAO: 2020R01243

1

**AFFIDAVIT OF JOSEPH CHENG**

2   STATE OF WASHINGTON            )

3                                  )          ss
    COUNTY OF WHATCOM              )

4

5         I, Joseph Cheng, being first duly sworn on oath, depose and say:

6         **I.    INTRODUCTION AND AGENT BACKGROUND**

7         1.    I am a law enforcement officer of the United States within the meaning of

8   18 U.S.C. § 2510(7) and empowered by law to conduct investigations of, and to make

9   arrests for, offenses enumerated in 18 U.S.C. § 2516.

10         2.    I am a Special Agent (SA) with the Drug Enforcement Administration

11   (DEA), United States Department of Justice.  I have been so employed since August

12   2006.  In connection with my official DEA duties, I investigate criminal violations of the

13   federal narcotics laws, including but not limited to, Title 21, United States Code,

14   Sections 841, 843, 846, and 848.  I am currently assigned to the Bellingham Resident

15   Office of the DEA's Seattle Field Division.  My current assignment involves

16   investigations of high-level drug trafficking organizations within the Western

17   Washington area and elsewhere.

18         3.    I have completed the DEA Basic Agent Training Course as well as other

19   training courses related to gangs and narcotics trafficking.  I have participated in

20   narcotics investigations at both the local and federal level, and I have participated in

21   numerous federal search warrants.  As a result, I have become familiar with methods of

22   operation of drug traffickers and organizations.  As a Special Agent with the DEA, I have

23   the responsibility of working with other federal and state law enforcement officers in

24   investigations of violations of federal and state controlled substance laws, including the

25   investigation of the distribution of controlled substances including fentanyl and its

26   analogues, cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine,

27   heroin, marijuana, and other dangerous drugs.

28

1       4.     I have interviewed numerous drug dealers, drug users, and knowledgeable

2 confidential informants about the lifestyles, appearances, and habits of drug dealers and

3 users.  I have become familiar with how narcotics traffickers smuggle, package, transport,

4 store, and distribute narcotics, as well as how they collect and launder drug proceeds.  I

5 am also familiar with the how narcotics traffickers use telephones, cellular telephone

6 technology, internet, pagers, coded communications and slang-filled conversations, false

7 and fictitious identities, and other means to facilitate their illegal activities and mislead

8 law enforcement investigations.

9       5.     I have also participated in investigations that involved the interception of

10 wire communications, including four investigations of large-scale drug trafficking

11 organizations in which I was the case agent and each of which resulted in the conviction

12 of approximately 20 individuals on federal drug-related charges.  In addition to these

13 cases, I have participated in numerous other wiretap investigations in a variety of roles,

14 including by conducting physical surveillance and monitoring intercepted

15 communications.  I have been directly involved in the review and deciphering of

16 intercepted coded conversations between narcotics traffickers that were later corroborated

17 by surveillance or by targets' statements.  Throughout my law enforcement career, I have

18 spoken with, worked with, and gained knowledge from numerous experienced federal,

19 state, and local narcotics officers.

20      6.     I have been assigned as a DEA technical agent since 2010, when I

21 completed the DEA Basic Technical Course.  As part my duties I have been involved in

22 the searches of numerous cell phones and computers.

23      7.     The facts in this affidavit come from my training, experience, and

24 information obtained from other agents and witnesses.

25      **II.     PURPOSE OF THIS AFFIDAVIT**

26      8.     I make this affidavit in support of an application for a warrant authorizing

27 the search of the following location, which is further described below and in

28

Attachment A (attached hereto and incorporated by reference as if fully set forth herein), for evidence, fruits and instrumentalities, as further described in Attachments B (attached hereto and incorporated by reference as if fully set forth herein), of the crimes of *Distribution of Controlled Substances*, in violation of 21 U.S.C. § 841(a)(1); *Conspiracy to Distribute Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and *Money Laundering* and *Conspiracy to Launder Money*, in violation of 18 U.S.C. §§1956 and 1957, as described herein:

      a) **Target Location: 7**402 44th Avenue Northeast, Marysville, Washington is a commercial building with a business location of Superior Sole Welding & Fabrication Inc.  The numbers 7402 and a white sign with "Superior Sole Welding and Manufacturing Co. Inc" are displayed on the side of the building facing 44th Avenue Northeast.

9.     For the **Target Location**, authority to search extends to all parts of the property, including main structure, garage(s), storage structures, outbuildings, and curtilage, and all containers, compartments, or safes located on the property, whether locked or not where the items described in Attachment B (list of items to be seized) could be found.

10.    I believe probable cause exists that the **Target Location** contains evidence related to money laundering conducted by J. Andrew Sole on behalf of Bradley WOOLARD, who is pending trial for multiple drug trafficking counts as discussed below.

## IV.    SOURCES OF INFORMATION

11.    I make this Affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources and others:

      a.  My training and experience investigating drug trafficking, money laundering and related criminal activity, as described above;

AFFIDAVIT OF SPECIAL AGENT CHENG - 3
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. Oral and written reports and documents about this and other investigations that I have received from agents of the DEA and the Whatcom County Sheriff's Office (WCSO), and other federal, state and local law enforcement agencies;

c. Physical surveillance conducted by the aforementioned agencies, and other law enforcement agencies, that has been reported to me directly or indirectly;

d. Telephone toll records and subscriber information;

e. Washington State Department of Licensing records;

f. Commercial databases;

g. Public records;

h. Publicly viewable information on social media websites (*i.e.*, Facebook);

i. Documents, photographs, stored communications and other records obtained via search warrant and subpoena; and

j. Data obtained via court authorized search warrants.

12. I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for a fair determination of probable cause for the requested search warrant.

13. In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

## IV.   SUMMARY OF INVESTIGATION

14. This investigation began in July 2018. The investigation revealed that Bradley WOOLARD repeatedly ordered fentanyl and furanyl fentanyl in powder form over the internet from China. Once WOOLARD and/or his coconspirators received the drugs through the mail, WOOLARD caused them to be pressed into counterfeit oxycodone pills using pill presses. Once pressed, WOOLARD, Anthony PELAYO, Timothy MANTIE, Jerome ISHAM, Jose Feliciano LUGO, and others distributed these

AFFIDAVIT OF SPECIAL AGENT CHENG - 4
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  pills into the community.  This illegal business was extremely lucrative, generating

2  millions in cash drug proceeds.

3      15.  Bradley Woolard was arrested on a federal arrest warrant and complaint in

4  this case in September 2018.  On July 29, 2020, a grand jury in the Western District of

5  Washington returned the Fourth Superseding Indictment in *United States v. Woolard,*

6  *et al.*, case no. CR18-217RSM, which contains the charges against WOOLARD,

7  PELAYO, MANTIE, ISHAM, and LUGO, and trial is scheduled to commence on June

8  21, 2021.  WOOLARD, PELAYO, MANTIE, ISHAM, and LUGO are charged with

9  *Conspiracy to Distribute Controlled Substances* (count 1).[1]  WOOLARD, PELAYO,

10  ISHAM, and LUGO are also charged with substantive counts of *Possession of Controlled*

11  *Substances* (fentanyl and/or furanyl fentanyl) *with Intent to Distribute*, namely,

12  WOOLARD (counts 2-6, 28, and 48), PELAYO (counts 28), ISHAM (counts 28, and 30-

13  31), and LUGO (counts 28 and 49).  Certain of the defendants are also charged with

14  *Attempted Possession of Furanyl Fentanyl with Intent to Distribute*, namely, WOOLARD

15  (counts 10, 29, 34, and 47), PELAYO (counts 29, 34, and 47), and ISHAM (counts 29,

16  34, and 47).  The Fourth Superseding Indictment also charges three of the defendants

17  with *Possession of Firearms in Furtherance of a Drug Trafficking Offense*, namely,

18  WOOLARD (count 9), PELAYO (counts 11-12), and ISHAM (count 33).  WOOLARD

19  is also charged with *Unlawful User of a Controlled Substance in Possession of Firearms*

20  (count 8).  ISHAM (in count 32) and LUGO (in count 46) are charged with *Felon in*

21  *Possession of a Firearm*.  WOOLARD and PELAYO are charged with *Conspiracy to*

22  *Commit Money Laundering* (count 13) and substantive counts of *Money Laundering*

23  (counts 14-27), based upon wire transfers to China to promote the conspiracy charged in

24  count 1.  Finally, PELAYO is charged with *Conspiracy to Commit Money Laundering*

25

26

27  [1] Jerome ISHAM was arrested on August 6, 2018.  Bradley WOOLARD was arrested on September 1, 2018.
Anthony PELAYO was arrested on June 21, 2019.  Timothy MANTIE was arrested on October 23, 2019.  Jose

28  LUGO was arrested on October 24, 2019.

AFFIDAVIT OF SPECIAL AGENT CHENG - 5
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(count 35) and substantive counts of *Money Laundering* (counts 36-45), based largely upon financial transactions with Andrew TONG that were intended to conceal and disguise the nature, location, source, ownership, and control of PELAYO's drug proceeds.

16.    Six defendants have pleaded guilty to charges in this case, namely, Griffin THOMPSON (*Conspiracy to Distribute Controlled Substances*), Keith STRAND (*Conspiracy to Distribute Controlled Substances* and *Conspiracy to Commit Money Laundering*), Adrian BERGSTROM (*Conspiracy to Distribute Controlled Substances*), Shawna BRUNS (*Conspiracy to Distribute Controlled Substances* and *Conspiracy to Commit Money Laundering*), TONG (*Conspiracy to Commit Money Laundering*), and Robert TABARES (*Conspiracy to Distribute Controlled Substances* and *Conspiracy to Commit Money Laundering*).[2] BERGSTROM was sentenced on March 6, 2020, to 14 months in custody; the remaining defendants have yet to be sentenced.

17.    In July and August 2018, investigators executed multiple federal search warrants at the residence of WOOLARD and his wife, BRUNS, located at 9717 99th Avenue Northeast, Arlington, Washington (hereinafter the "WOOLARD residence"). Pursuant to those search warrants, investigators seized approximately 10,000 light blue pills marked "M30" which tested positive for furanyl fentanyl, a fentanyl analogue. Investigators also seized numerous items during the searches of the WOOLARD residence and outbuildings, including 33 firearms (the majority of which were concealed in a hidden room in a shop on the property), thousands of rounds of ammunition, approximately $1.1 million in suspected drug proceeds concealed in various locations throughout the WOOLARD residence and in the shop areas on the property, and cell phones, including an Apple iPhone. Investigators seized documents from the

---

[2] Griffin THOMPSON was arrested on September 14, 2018.  Keith STRAND was arrested on June 13, 2019.  Adrian BERGSTROM was arrested on June 13, 2019.  Shawna BRUNS was arrested on June 13, 2019.  Andrew TONG October 22, 2019.  Robert TABARES was arrested on June 13, 2019

AFFIDAVIT OF SPECIAL AGENT CHENG - 6
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  WOOLARD residence referencing telephone number (360) 395-5222 and email:

2  bradwoolard79@gmail.com, as being used by WOOLARD.

3       18.    Investigators searched the iPhone and iPad seized from the WOOLARD

4  residence pursuant to search warrants.  Investigators learned this iPhone was assigned

5  (360) 395-5222 and Apple ID bradwoolard@ymail.com.  Two email accounts were

6  synced with this iPhone, bradwoolard@ymail.com and bradwoolard79@gmail.com.

7  Review of emails on this phone revealed email exchanges between WOOLARD, using

8  bradwoolard79@gmail.com, and individuals who appeared to be based in China.  In these

9  emails, WOOLARD and the China-based individuals openly discussed WOOLARD

10  attempting to obtain various chemical substances, including fentanyl and furanyl

11  fentanyl, from China.

12       19.    Investigators did not encounter WOOLARD at the WOOLARD residence

13  when the search warrants were executed, and his whereabouts were unknown, until

14  September 1, 2018, when he arrived at the at the San Ysidro Port of Entry, California,

15  from Mexico.  WOOLARD was referred to secondary inspection.  WOOLARD was

16  arrested that same day pursuant to an arrest warrant and complaint sworn in the Western

17  District of Washington, and WOOLARD has remained in custody since that time.

18       20.    In October 2018, in WOOLARD's Response to Government's Motion for

19  Detention (dkt. 29), the defense submitted a letter from J. Andrew SOLE (hereinafter

20  "SOLE"), stating:

21

22
23  My name is Andy Sole  I have been in business in Marysville for 24 years
    owning a welding fabrication shop.

24
25  I have known brad before he was married and became father to his twins.  I
    met Brad when he purchased a house from me in 2007ish

26
27  Brad had a very busy business mind and would frequently bounce ideas by
    me…mostly real estate and flip projects

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 7
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> Brad married Shawna who went to school with my youngest daughter they have 2 beautiful twin girls…
>
> I employ close to 80 people and Brad has the skill in welding and construction to easily be employed by me or one of my partners abiding by the court[']s requirement if he is granted bail

*See* dkt. 29 at 10.  The letter reflected that SOLE's email address was "snowoff@aol.com."  *Id.*

21.     Real property records and documents located in the WOOLARD residence indicate that WOOLARD purchased the WOOLARD residence from SOLE in 2010 and financed that purchase with a loan from SOLE.  Investigators suspect that WOOLARD used his cash drug proceeds when repaying that loan to SOLE.

22.     Additionally, real property records and documents located in the WOOLARD residence also reflect that SOLE played a key role in WOOLARD's purchase of a beach house, located at 3208 Shoreline Drive, Camano Island, Washington. That residence was purchased in the name of a trust, "Trust 040," for which SOLE was both Trustor and Trustee, with WOOLARD as the only listed beneficiary. Again, investigators suspect that WOOLARD used his cash drug proceeds to pay SOLE.

23.     Records checks and searches show that WOOLARD had his own construction business, WOOLARD Contracting LLC, and was also involved in "flipping" houses.  The receipts found during the searches of the WOOLARD residence reflect that WOOLARD commonly, although not exclusively, used cash (suspected cash drug proceeds) in conjunction with expenditures made related to construction expenses. Investigators suspect that SOLE was an investor in some of these "flips."

24.     During this investigation, investigators have obtained search warrants for seized cell phones, emails, and iCloud accounts and reviewed stored communications located therein.  In this manner, investigators located communications between WOOLARD and SOLE indicating that SOLE was aware, at least as early as November

AFFIDAVIT OF SPECIAL AGENT CHENG - 8
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   2016, that WOOLARD was engaged in illegal pill pressing.  Messages between

2   WOOLARD and SOLE, and between WOOLARD and PELAYO, also indicate that

3   WOOLARD made payments to SOLE in cash, including a payment of $100,000 in cash

4   that PELAYO delivered to SOLE on WOOLARD's behalf.  Messages also indicated

5   SOLE provided false pay stubs purporting to document WOOLARD's income as an

6   employee for SOLE, so that WOOLARD could justify his income and purchase a

7   vehicle, believed to be a 2017 GMC Sierra.[3]  Finally, stored messages indicate that when

8   WOOLARD was "in hiding" after the execution of the first search warrant at the

9   WOOLARD residence, WOOLARD stayed in contact with SOLE and asked SOLE to

10  hide a vehicle so that law enforcement could not seize it.

11       25.     Based on a review of documents, SOLE was involved in WOOLARD's

12  purchase of multiple properties. These properties include Woolard's primary residence at

13  9719 99th Avenue Northeast, Arlington and a vacation cabin at 3208 Shoreline Drive,

14  Camano Island Washington.  The purchase of these residences is described in greater

15  detail below.  SOLE also assisted WOOLARD in the purchase of an investment property,

16  located at 14831 Three Lakes Road, Snohomish, Washington, which WOOLARD

17  remodeled and sold.

18                          **IV.   PROBABLE CAUSE**

19       26.     In this section, I discuss background information regarding SOLE and the

20  **Target Location**. I also discuss WOOLARD's highly lucrative drug trafficking

21  organization in order to provide context for the stored communications between

22  WOOLARD and SOLE.

23

24

25

26

27  [3] Recovered messages, from around the time of this exchange, indicate that WOOLARD was attempting to purchase
    a pickup truck.  According to a search of Washington Department of Licensing records, Bradley WOOLARD

28  registered a 2017 GMC Sierra on March 3, 2017, which is consistent with the timing of the records.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**A.     Background on SOLE and the Target Location**

27.     According to a search of the Washington State Secretary of State's website conducted in February 2021, Superior Sole Welding & Fabrication Inc has a formation date of December 6, 1996, and is currently active. The business has listed governing officers of J. Andrew SOLE and Rita SOLE (believed to be SOLE's wife), a street address of 7402 44th Avenue Northeast, Marysville, Washington 98270 (**Target Location**) and a mailing address of PO Box 1589, Marysville, Washington.

28.     Additional searches of the Washington State Secretary of State's website conducted in February 2021 show that Rita SOLE and/or J. Andrew SOLE have the following, currently active registered corporations:

- SDS Property Management LLC with a formation date of April 6, 2004, an address of 4601 Chennault Beach Road Suite 200, Mukilteo, Washington 98275, a registered agent of Nancy Henry and a governor of J. Andrew SOLE.

- J Tatman Construction Services, Inc with a formation date of March 16, 2009, an address of 7402 44th Avenue Northeast, Marysville, Washington 98270 (**Target Location**), mailing address of PO Box 1589, Marysville, Washington 98270, a registered agent of Rita SOLE and listed governors of Rita SOLE and J. SOLE.

- R.J.A.S. LLC with a formation date of March 24, 2003, an address of 7402 44th Avenue Northeast, Marysville, Washington 98270 (**Target Location**), a mailing address of PO Box 1589, Marysville, Washington 98270, a registered agent of Rita SOLE and governors of Rita SOLE and J. Andrew SOLE.

- Atlas LLC, with a formation date of May 7, 2020, an address of 7402 44th Avenue Northeast, Marysville, Washington 98270 (**Target Location**), a registered agent of J. Andrew SOLE and governors of J. Andrew SOLE, Rita SOLE, Kenneth Schueller, and Danette Schueller.

29.     According to records obtained from Verizon in March 2021, 425-422-3201 is subscribed to "Superior Sole Welding and Fabr" at PO Box 1589, Marysville,

Affidavit of Special Agent Cheng - 10
USAO #2020R01243

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1  Washington, and was activated on June 16, 2014 and they indicate that this phone is
2  currently active.  The listed contact is "Andy Sole."  As discussed above, PO Box 1589
3  Marysville, Washington, is the address used by multiple businesses registered by SOLE
4  and the address used for Trust 040, which entity is the owner of WOOLARD's Camano
5  Island, Shoreline Drive property.

6        30.      According to a Washington Department of Licensing search conducted in
7  February 2021, J. Andrew SOLE has driver's license with a listed address of 7402 44th
8  Avenue Northeast, Marysville, Washington (**Target Location**) and a mailing address of
9  PO Box 1589, Marysville, Washington.  Rita Isabelle SOLE has a driver's license with a
10 location of 3321 171st Place Northwest, Stanwood, Washington,[4] and a mailing address
11 of PO Box 1589, Marysville, Washington.

12       31.      According to the United States Postal Inspection Service, PO Box 1589
13 Marysville, Washington is rented to Rita SOLE, who is listed as the secretary of Superior
14 Sole Welding and Fab Inc with a listed address of 7402 44th Avenue Northeast,
15 Maryville, Washington (**Target Location**).  Additionally, this PO Box was opened in
16 May 2004 and was last verified on June 25, 2019.

17       32.      According to a check of the Snohomish County Assessor's website
18 conducted in February 2021, 7402 44th Avenue Northeast, Marysville, Washington
19 (**Target Location**) is owned by R J A S LLC, with a mailing address of PO Box 1589
20 Marysville, Washington.  As discussed above, R J A S LLC has a registered agent of Rita
21 SOLE and governors of J. Andrew SOLE and Rita SOLE.  Additionally, the website
22 indicates that **Target Location** was purchased in May 2003.

23
24
25
───────────────
26 [4] Four other people have addresses listed at 3321 171st Place Northwest, Stanwood, Washington.  Additionally,
   according to Washington DOL records, numerous vehicles are currently registered to that address.  Some of these
27 vehicles are registered to the SOLEs and some are registered to other individuals.  Investigators suspect that SOLE
   is currently renting 3321 171st Place Northwest, Stanwood, Washington to individuals unrelated to this
28 investigation.

33.     According to records from Puget Sound Energy, utility service for 7402 44th Avenue Northeast, Marysville, Washington (**Target Location**) is in the name of Superior Sole Welding & Fab with a listed phone number of 425-422-3202. Additionally, the February 2021 payment was made on a credit card in the name Elizabeth George and the January 2021 payment was made on a credit card in the name Rita Sole.

34.     In February 2021, investigators spoke to an employee at Superior Sole Welding & Fabrication at the **Target Location**.  The employee indicated that Andrew SOLE was still the owner of the business, although he had moved to Arizona.  The employee stated that SOLE still has an office at Superior Sole Welding & Fabrication and confirmed that SOLE visits the business when he is in Washington, although he rarely does so.

35.     Based on the above, investigators believe that J. Andrew SOLE and Rita SOLE have continuously owned and operated 7402 44th Avenue Northeast, Marysville, Washington (**Target Location**) since 2003.

**B.     Chronology of the Woolard Drug Investigation: Traffic Stop of Griffin THOMPSON (July 2018)**

36.     This investigation began in July 2018.  On July 27, 2018, investigators observed a vehicle driven by Griffin THOMPSON depart his residence in Bellingham, Washington, drop his passenger off at a Safeway, located in Arlington, Washington and drive to 9717 99th Avenue Northeast, Arlington, Washington (the WOOLARD residence).  Investigators then observed THOMPSON return to the Safeway, pick up his passenger and drive south.  Investigators then had THOMPSON's vehicle stopped by uniformed officers.  The driver of the vehicle was positively identified as Griffin THOMPSON, via his Washington driver's license and the passenger was identified as Mikala MURPHY, via her U.S. passport  A narcotics detecting K-9 was deployed to sniff the exterior of the vehicle and gave a positive alert to the odor of narcotics emanating

from the vehicle.  The vehicle was subsequently searched pursuant to the vehicle

exception.  During that search, investigators located and seized from underneath the front

passenger seat (in an area that could only be accessed from the rear seats) a white box

which contained 3 ziploc baggies of light blue colored pills marked "M30."  An open-

source internet search indicated that pills marked "M30" are 30 milligram Oxycodone.

Oxycodone is a Schedule II narcotic.  These pills were sent to the DEA laboratory for

testing and the laboratory counted 3,137 pills and indicated that they tested positive for

furanyl fentanyl, which is a fentanyl analogue.

**C.   Execution of Multiple Search Warrants of the WOOLARD Residence in July and August 2018**

37.     On July 28, 2018, the Honorable Mary Alice Theiler signed a search

warrant authorizing the search of 9717 99th Avenue Northeast, Arlington, Washington ,

*i.e.*, the residence of WOOLARD, Shawna Marie Bruns (WOOLARD's wife), and their

minor children.   During the execution of the search warrant, investigators found

approximately 10,000 counterfeit Percocet pills located in the office of the main

residence.  In this office, there were numerous documents with the name Bradley

WOOLARD.  Investigators also seized from office a small container of blue dye, which

investigators suspect could have been used by WOOLARD in the process of pressing

white fentanyl powder and binding materials into counterfeit M30 pills.  The pills located

in the office were consistent with the appearance of the pills seized from THOMPSON on

July 27, 2018.  These pills were submitted to the DEA laboratory for testing.  The

laboratory counted 12,389 pills and indicated that they tested positive for furanyl

fentanyl.

38.     Investigators also found approximately $400,000 in cash located in two

safes, one in the office and one in the master bedroom closet.  Items of dominion and

control with WOOLARD's name were found in the office and master bedroom.

39.     During the July 28 search of the WOOLARD residence, investigators

seized two shipping labels from the trash in the office.  One shipping label had the sender

AFFIDAVIT OF SPECIAL AGENT CHENG - 13
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and recipient removed but described the contents as "Lab supplies" with a weight of 0.1

2   kilograms, a value of $5.00 and goods' origin of "CN".  A second shipping label was

3   largely intact and also listed the contents as "Lab supplies" with the same weight, value

4   and goods' origin.  This shipping label showed "Danette Skelton" and "32326 Mountain

5   Loop Hyway, Granite Falls WA USA 98252" as the "ship to" information and the "from"

6   information listed "Wuzong Hui" and "China 61 Jianning Road No. 3 Building 1502

7   Room GulouQu, Nanjing Jiangsu 210000."  Additionally, the shipping labels listed

8   tracking number LS508043116CN.  According to the USPS website, this package was

9   delivered to the Granite Falls address on January 29, 2018.

10      40.   During August 2018, multiple additional search warrants were executed at

11   the WOOLARD residence.  As a result of these searches, investigators seized

12   approximately $1.1 million in cash from the residence and shops/outbuildings in total.

13   Some of that cash was found in plastic, waterproof containers as depicted below and in

14   Attachment B.  Investigators observed approximately five containers in total, three of

15   which contained U.S. currency.  Investigators observed that some of the containers were

16   numbered; investigators found boxes numbered five, six and nine, which leaves

17   approximately six numbered containers unaccounted for.

18      41.   One of the plastic waterproof containers, which contained approximately

19   $100,000, was found in one of WOOLARD's shops, concealed behind the bottom drawer

20   of a cabinet near the toolboxes.  As discussed below, in late January and early February

21   2017, WOOLARD told PELAYO that there was $100,000 concealed in one of his

22   toolboxes and told PELAYO to take that money to SOLE.  Investigators believe that the

23   hiding place described by WOOLARD is consistent with the location where investigators

24   found the above-referenced plastic waterproof box containing approximately $100,000.

25      42.   The following photos depict two of the plastic containers recovered from

26   the WOOLARD residence during the searches.  The first photo shows one of the boxes

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 14
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that was found full of bundles of money, and the second photo shows one of the

numbered boxes, which empty:





43.     During the searches of the WOOLARD residence, investigators also seized

documents relating to various trusts, assets and real property, including documents that

pertain to SOLE.  Some of these documents are discussed in this affidavit.

AFFIDAVIT OF SPECIAL AGENT CHENG - 15
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

44.    For example, during the search of the WOOLARD residence, investigators located a document with handwritten notes stating as follows:



45.    On August 16, 2018, the computer and other digital devices present in the WOOLARD residence, including an Apple iPhone and iPad were seized pursuant to a federal search warrant that had been issued by U.S. Magistrate Judge Paula L. McCandlis on August 15, 2018.  Searches of WOOLARD's iPhone and iPad are discussed below.

46.    During execution of a federal search warrant at 3208 Shoreline Drive, Camano Island, Washington, on August 16, 2018, investigators noted that a framed plaque in the kitchen stated, "Woolard Family Beach House, Est. 2017."  Investigators also discovered dominion and control documents, for example, fishing licenses issued to WOOLARD, BRUNS, and their children.  Investigators also discovered evidence of drug use, including a box containing syringes, foil, and several pills from under a bathroom sink

**D.    Law Enforcement Intercepts Four Packages from China (August 2018)**

47.    As discussed above, the shipping labels found in the WOOLARD residence listed the "from" information as "Wuzong Hui" and "China 61 Jianning Road No. 3 Building 1502 Room GulouQu, Nanjing Jiangsu 210000."  Investigators identified two additional parcels that were en route to Western Washington from the same shipper as

Affidavit of Special Agent Cheng - 16
USAO #2020R01243

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

listed on packaging materials found in the WOOLARD residence. Both parcels were intercepted. On August 2, 2018, investigators obtained federal search warrants for the two additional parcels, one of which was addressed to Sadie BATES at 12118 Hwy 99 #J 402, Everett, Washington, tracking number LY460463148CN, and one of which was addressed to Adrian BERGSTROM at 200 East Maple St Apt 507, Bellingham USA US 98225, tracking number LY466322829CN. The parcels were searched pursuant to the warrant, and their contents were submitted to the DEA laboratory for testing. According to the DEA laboratory, the contents of both parcels tested positive for furanyl fentanyl and the contents weighed approximately 99.4 grams and 99.6 grams.

48.     Investigators identified two additional parcels that were addressed to the individuals in Western Washington, including an additional parcel addressed to BATES. BATES consented to the search of the parcel addressed to her. Investigators obtained a search warrant for the other parcel, which was addressed to Jessie SIMMONS. According to the DEA laboratory, the contents of both parcels tested positive for furanyl fentanyl and the contents weighed approximately 99.2 grams and 99.6 grams. As part of this investigation, four parcels have been seized from this shipper, all with similar shipping information, that contained a substance which tested positive for furanyl fentanyl.

49.     As discussed below, searches of emails between WOOLARD and "Mary" (one of WOOLARD's Chinese sources of supply) show that WOOLARD paid "Mary" for the drugs shipped to BATES, BERGSTROM, and SIMMMONS, and that WOOLARD provided these shipping address to "Mary" to send the packages.

**E.      Review of eBay, PayPal, and CBP Records**

50.     Based on a review of documents, records, and interviews of cooperating individuals, investigators believe that WOOLARD obtained multiple pill presses which he used to manufacture counterfeit oxycodone pills containing fentanyl and its analogues.

AFFIDAVIT OF SPECIAL AGENT CHENG - 17
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Investigators believe that WOOLARD ordered his first pill press, a TDP-5, in February
2  2016.

3      51.    According to records obtained from eBay, WOOLARD had an eBay
4  accounts associated with the user ID "wobra.br.kcmtwxi" with the full name of "Brad
5  Woolard," the address of 9717 99th Ave NE, Arlington, WA, the phone number of 360-
6  395-5222 and email address of bradwoolard79@gmail.com.  Based in part upon the
7  name, phone number, and address match, investigators believe this eBay account is
8  WOOLARD's.  According to the eBay records, on April 18, 2016, WOOLARD, under
9  his user ID "wobra.br.kcmtwxi," purchased "the molds "G3722" for tablet press pill press
10 die pill maker TDP-0/1.5/5/6."  According to an internet search, pills marked "G3722"
11 contain Alprazolam which is a schedule IV controlled substance.

12     52.    WOOLARD also had an  eBay account with the user ID "woola-bra" with
13 the full name of "Brad Woolard," the address of #108 526n west ave, Arlington, WA
14 98223, the phone number of 360-395-5222 and email address of
15 bradwoolard@ymail.com.  During the search of the WOOLARD residence, investigators
16 found documents with WOOLARD's name and this address.  For example, on July 28,
17 2018, in the master bedroom closet, investigators found a billing statement for April 2017
18 from Washington State Employment Security Department addressed to "Woolard
19 Contracting LLC," at "108 526 N West Ave, Arlington, WA 98223."  Also, investigators
20 have obtained records from Arlington Copy Mail & More, located at 526 N West
21 Avenue, Arlington, Washington 98223.  According to those records, WOOLARD rented
22 mailbox 108 at this location on or about December 10, 2008.  The records include copies
23 of WOOLARD's passport and Washington driver's license.  Based on the name, phone,
24 and address match, investigators believe this eBay account is WOOLARD's.

25     53.    In the shipping address history for WOOLARD's eBay account with user
26 ID "woola-bra", one of the shipping address is listed as Keith STRAND at 1443 Lake

27
28

AFFIDAVIT OF SPECIAL AGENT CHENG - 18
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | Drive, Camano Island, WA 98282, with a phone number of 360-659-5222 (i.e., the
2 | number for WOOLARD's seized iPhone).

3 |     54.    According to eBay records for WOOLARD's "woola-bra" account, in
4 | auctions that ran from January 2015 through February and March 2016, WOOLARD
5 | purchased molds for "30M," "A215," "K9," and "X2" for the TDP-0/1.5/5/6 pill presses
6 | for $109, $109, $109 and $119 respectively.  As discussed above, the pills seized from
7 | THOMPSON and WOOLARD were marked "M30" and the pills from WOOLARD's
8 | residence tested positive for fentanyl.  According to an internet search, pills marked
9 | "M30," "A215" and "K9" all contain 30 mg of Oxycodone Hydrochloride, and pills
10 | marked "X2" are Xanax, which contains Alprazolam.  Based on training and experience,
11 | investigators know that pill dies are used in pill presses to compress powders into pill
12 | form, often bearing specific markings which indicated what the pills contain.  In this
13 | investigation, pills were pressed with the "M30" marking.  Investigators also frequently
14 | seen being distributed in Western Washington and containing fentanyl.

15 |     55.    According to eBay records for WOOLARD's "woola-bra" account, in an
16 | auction that ran from September 2014 through September 16, 2016, WOOLARD
17 | purchased item number 191324194073, an "automatic single punch tablet press pill
18 | making machine maker TDP-5 New," for $1,619.60.  An internet search shows that the
19 | TDP-5 is a Desktop Tablet Press manufactured by LFA Tablet presses capable of
20 | pressing 5400 pills per hour with a listed weight of 125 kg or approximately 275 pounds.

21 |     56.    According to PayPal records, WOOLARD has PayPal accounts in the name
22 | Bradley WOOLARD with the email address of bradwoolard79@gmail.com.  According
23 | to PayPal records, on February 8, 2016, WOOLARD sent a payment of $1,710.80 to
24 | Sanven Corporation for the eBay purchase of item ID 191324194073, described as an
25 | "automatic single punch tablet press pill making machine maker TDP-5 new," with a
26 | listed shipping address of "Keith Strand, 1443 Lake Dr., Camano Island, WA 98282."

27 |
28 |

AFFIDAVIT OF SPECIAL AGENT CHENG - 19
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

57.     Additionally, CBP records show that between August 31, 2016 and March 22, 2017, six parcels entered the United States addressed to STRAND at "1443 Lake Dr., Camano Island, WA" from Wu Zong Hui at "61 Jianning Road No. 3 building 1502 Room" with the cargo listed as "sample" and weight between 0.18 kg and 0.23 kg and a listed value of $5. As discussed above, investigators seized parcels addressed to BATES and BERGSTROM, from the same shipper with similar shipping information, and the contents of these packages tested positive for a fentanyl analogue.

58.     Investigators have reviewed records showing that Keith STRAND had multiple PayPal accounts under his own name. The PayPal records show that on September 20, 2016, STRAND, using his PayPal account ending *3926, purchased a "TDP-5 Tablet Press Compression Force Circular Shaped Single Punch Hot" from Sanven Corp., for $1,599.90, which was purchased over eBay.

59.     Based upon messages between WOOLARD and STRAND obtained by search warrant, investigators believe that STRAND received a ZP 7 pill press for WOOLARD in November 2016. According to U.S. Customs and Border Protection's records, a parcel entered the United States addressed to STRAND at "1443 Lake Dr., Camano Island, WA" from Shanghai Chengxiang Machinery in China with an arrival date listed as November 11, 2016. The description of the cargo was "machinery for candy press" and the weight was listed at 716 pounds.

60.     Investigators have also reviewed emails between WOOLARD (using his email address bradwoolard79@gmail.com) and an individual believed to be in China that in late October 2016, indicating that WOOLARD was seeking to obtain pill dies suitable for use in a ZP 7 pill press. In an email with the subject, "Picture for zp7 dies," WOOLARD sent a mechanical drawing, and in the emails that followed, WOOLARD confirmed that he wanted M30 and Xanax molds. He was subsequently sent an invoice from this individual in the amount of $2,064.

AFFIDAVIT OF SPECIAL AGENT CHENG - 20
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

61.     Additionally, eBay records show that codefendant Robert TABARES won an auction for a ZP 9 Rotary Table Press Machine on June 6, 2018.

62.     Based on the information set forth herein, to include these CBP, eBay and Paypal records, investigators believe that WOOLARD purchased his first pill press and pill press dies in early 2016.  Additionally, investigators believe that WOOLARD used this pill press, and subsequently acquired pill presses, to manufacture fentanyl-laced, counterfeit Oxycodone pills which he distributed.

**F.     Interview of a Cooperating Defendant in September 2019**

63.     In September 2019, investigators interviewed a cooperating defendant (CD) who provided information about the drug trafficking activities of WOOLARD, MANTIE, PELAYO and others.  At that time, the CD had been indicted by a federal grand jury for *Conspiracy to Distribute Controlled Substances*, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, *Conspiracy to Commit Money Laundering*, in violation of 18 U.S.C. § 1956, and various other drug trafficking counts.  The CD subsequently pleaded guilty and is pending sentencing.  The CD is cooperating for judicial consideration in his/her sentencing.   According to NCIC, the CD has no other criminal history other the current charges.

64.     The CD told investigators that WOOLARD was obtaining fentanyl from China and that he was communicating with those sources of supply via email.  The CD also stated that WOOLARD was paying his Chinese sources of supply via Bitcoin and Western Union.  The CD told investigators that WOOLARD was using pill presses to press the fentanyl into counterfeit "M30" pills.  The CD told investigators that WOOLARD had purchased three pill presses, the first two were used by WOOLARD at his residence and the third was used by WOOLARD and PELAYO at another residence on Russian Road in Granite Falls Washington.  The CD stated that after the search warrant at WOOLARD's residence, WOOLARD had the pill press destroyed.  The CD

AFFIDAVIT OF SPECIAL AGENT CHENG - 21
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  stated that WOOLARD started pressing pills in 2015 and continued until the time that his
2  house was searched.

3       65.     The CD was asked about WOOLARD's redistributors, including MANTIE
4  and PELAYO.  The CD was shown a Washington driver's license photograph of
5  MANTIE, which the CD positively identified.  The CD stated that MANTIE was
6  WOOLARD's main redistributor of pills.  The CD stated that they were told by
7  WOOLARD that in 2015 MANTIE was initially bringing $25,000 every other week in
8  drug proceeds to WOOLARD and that that amount increased to approximately $50,000
9  every other week.  The CD stated that the most that they had heard that MANTIE brought
10 WOOLARD was $95,000 at one time.  The CD stated that this was shortly before the
11 search of WOOLARD's residence.

12      66.     The CD stated that PELAYO was also distributing pills for WOOLARD
13 and that PELAYO was initially paying WOOLARD $10,000 in drug proceeds.  The CD
14 stated that in mid-2017 PELAYO began pressing pills for WOOLARD and that
15 WOOLARD's pill press was moved to a property on Russian Road.  (Note:  according to
16 records obtained from Snohomish PUD, PELAYO called Snohomish PUD, from phone
17 number 425-404-1227, and indicated that he was the owner of 18222 Russian Road,
18 Arlington Washington and asked for various changes to the utilities at the property.)

19      67.     During the interview of the CD, the CD stated that the CD had brought cash
20 to SOLE a couple of times at the **Target Location** when requested to do so by
21 WOOLARD.  Based on discussions with WOOLARD, the CD understood that that the
22 cash was for mortgage payments that WOOLARD owed SOLE. The CD estimated the
23 cash payments to be $2,000 cash each time the CD brought cash to SOLE.

24 **G.   Search of iPad seized from the WOOLARD Residence**

25      68.     During one of the searches of the WOOLARD residence, investigators
26 seized an iPad.  The search warrant signed by US Magistrate Judge Paula L. McCandlis
27 on October 5, 2018, also authorized the search of this device.  The "Owner Name" is

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 22
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  listed as "Brad's iPad" and the associated Apple ID is bradwoolard@ymail.com.

2  Records obtained from Apple show that this is WOOLARD's Apple ID.  Investigators

3  located numerous photos stored in this device which depict WOOLARD and BRUNS.

4       69.     Investigators reviewed iMessages between bradwoolard@ymail.com and 1-

5  425-404-1227, which is saved under the contact name "Tonny."  At the time of the

6  execution of a search warrant at Anthony PELAYO's residence in May 2019,

7  investigators detained PELAYO at a nearby businesses and seized a cellphone from his

8  pocket which was assigned 425-404-1227.

9       70.     Based on text messages and other information obtained during this

10 investigation, investigators believe that PELAYO and WOOLARD worked together to

11 press and distribute the fentanyl-laced (and furanyl-fentanyl-laced) counterfeit oxycodone

12 pills.  For example, on January 29, 2017 WOOLARD and PELAYO exchanged the

13 following messages:

14

15      WOOLARD: "U should run enuf to get by til I'm back before u move it. Might

16      need my adjustments after the ride."

17       PELAYO: "Ya that is my plan I'm gonna run that whole bucket at least then c

18      where I'm at."

19      PELAYO: "Tim never hit me up dude said he will swap that 30 tomo"

20      WOOLARD: "Might be a day or two. U know how it goes"

21      WOOLARD: "But thank you."

22      WOOLARD: "This will be a good thing for us. Safe to only I know where and I'm

23      as solid as a rock."

24      WOOLARD: "I just made a offer on a beach house. Our family's can have fun this

25      summer and for a long time."

26       PELAYO: "O ya I'm gonna save every penny to ya this is gonna b hella good I'm

27      gonna b working this week on cleaning some shit out and all that good stuff"

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    WOOLARD: "Good deal.  Please toss the old presses out for me"

2    WOOLARD: "Keith will help. I'll send his #"

3    PELAYO: "Ok would you mind if I take them apart so I could just put them in

4    different bags"

5    WOOLARD: "Not at all use my tools whatever u need"

6    PELAYO: "Ok cool that will be lighter when I toss it."

7        71.    Based on the ongoing conversation, the ongoing investigation, and my

8    training and experience I believe, in this conversation, that PELAYO and WOOLARD

9    were discussing PELAYO pressing a large quantity of pills before WOOLARD left town;

10   that WOOLARD asked PELAYO to dispose of some old pill presses for WOOLARD;

11   and that Keith STRAND would help PELAYO do so.  When WOOLARD refered to

12   putting an offer on a beach house, I believe that WOOLARD was likely referring to the

13   property located at 3208 Shoreline Drive, Camano Island.  WOOLARD's purchase of

14   this property is discussed in greater detail below.

15       72.    In late January and early February 2017, WOOLARD and PELAYO had

16   the following exchange

17   WOOLARD          "Good deal.  I need you to take money to Andy tomo please"

18   WOOLARD          "If you go past my tool box.  Not the first set of drawers but

19                    he second.  Behind the bottom one 100k."

20       73.    WOOLARD then sent a file title "Andy.vcf" to PELAYO.  This file is a

21   contact card for a phone number 425-422-3201 saved under the name.  As discussed

22   herein, this phone is subscribed to SOLE's business, Superior Sole Welding &

23   Fabrication Inc., and SOLE is believed to be the user of this phone.

24       74.    The conversation between PELAYO and WOOLARD continued:

25   PELAYO            "O and I have that that 2 grand I still owe u to u want me to

26                    put it somewhere or give it to Shawna"

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| 1 | WOOLARD | "Don't tell him where I am. He probably knows he is not a |
| 2 | | fool. Keep the 2g for the hassle bro." |
| 3 | PELAYO | "Ya I don't tell peoples business bro ur in az as far as I kno |
| 4 | | on vaca" |
| 5 | WOOLARD | "Cool." |
| 6 | PELAYO | "Is he still at his shop by the police department" |
| 7 | WOOLARD | "Yup sole welding. He just got a new hip so call first." |
| 8 | PELAYO | "O damn ya I'll call him first" |
| 9 | PELAYO | "Just handle the thing with Andy" |
| 10 | WOOLARD | "Cool." |
| 11 | WOOLARD | "Take the money to Andy." |
| 12 | WOOLARD | "Please" |
| 13 | PELAYO | "What money" |
| 14 | WOOLARD | "Tim didn't call??" |
| 15 | WOOLARD | "He will" |
| 16 | PELAYO | "No he hasn't but I brought that money to Andy yesterday" |
| 17 | WOOLARD | "Cool" |
| 18 | PELAYO | "And dude said he has 40 to swap he said he wanted to do it |
| 19 | | before Monday or he will have to give it to his guy I told him |
| 20 | | it should happen before then" |
| 21 | WOOLARD | "It will" |
| 22 | PELAYO | "Ya for sure" |
| 23 | PELAYO | "Got that from t 55.2 imma swap and put it away" |
| 24 | WOOLARD | "Swap and give to Andy." |
| 25 | PELAYO | "Ok" |
| 26 | WOOLARD | "Thank you" |
| 27 | PELAYO | "Andy handled" |
| 28 | | |

Affidavit of Special Agent Cheng - 25
USAO #2020R01243

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1      WOOLARD        "Thank you."

2

3      75.     In the conversation above, investigators believe that WOOLARD directed

4  PELAYO to retrieve U.S. currency in the amount of $100,000, which WOOLARD had

5  concealed at the WOOLARD residence, and take it to SOLE at his shop, Sole Welding

6  (the **Target Location**).  As noted above, the location that WOOLARD described to

7  PELAYO to find $100,000 is consistent with the location where investigators located a

8  plastic container containing $100,000.  Additionally, according to Mapquest, the **Target**

9  **Location** is 0.3 miles away and a one-minute drive from the Marysville Police

10  Department, providing further evidence that WOOLARD wanted PELAYO to take his

11  cash drug proceeds to SOLE at the **Target Location**.  During the discussion with

12  WOOOLARD, PELAYO confirmed that he brought the money to SOLE.

13      76.     PELAYO then told WOOLARD that "T," whom investigators believe to be

14  Tim MANTIE, provided PELAYO with $55,200, which WOOLARD instructed

15  PELAYO to swap from small bills to large pills and then provide to SOLE.  Investigators

16  believe that this cash -- the $100,000 concealed at the WOOLARD residence as well as

17  the $55,200 provided by MANTIE – constituted drug proceeds WOOLARD, PELAYO

18  and MANTIE generated from the sale of counterfeit oxycodone pills.

19      77.     Investigators do not know if PELAYO brought WOOLARD's cash to

20  SOLE in one of the plastic waterproof boxes.  However, the fact that there appear to be

21  six numbered, plastic waterproof boxes that are unaccounted for suggests that PELAYO

22  may have done so.  If so, the presence of a plastic waterproof box at the **Target Location**

23  would be constitute valuable evidence of WOOLARD's drug trafficking as well as

24  WOOLARD's and SOLE's money laundering.

25      78.     In reviewing PELAYO's stored communications (obtained via court

26  authorized search warrants), investigators did not locate any messages between PELAYO

27  and SOLE.  However, a review of toll records shows that PELAYO contacted SOLE on

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 26
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   425-422-3201 once on January 31, 2017 and once on February 2, 2017.  The timing of
2   these contacts is consistent with the messages between PELAYO and WOOLARD
3   discussed above.

4   **H.      Search Warrants on Google and Microsoft**

5          79.     On March 26, 2019, US Magistrate Judge Paula L. McCandlis authorized a
6   search warrant for the Google accounts, broncosmith69@gmail.com and
7   bradwoolard79@gmail.com, both believed to be used by WOOLARD and a search
8   warrant for the Microsoft account, greenchem201609@hotmail.com, believed to be used
9   by one of WOOLARD's China-based fentanyl sources of supply.   On April 17, 2019,
10  investigators received data from Microsoft in response to the court authorized search
11  warrant.

12         80.     Investigators located over 100 emails between WOOLARD and "Mary" in
13  which they discuss the purchase of fentanyl by WOOLARD.  According to these emails,
14  WOOLARD made multiple orders of fentanyl from "Mary" which were shipped to
15  WOOLARD and PELAYO's associates in multiple packages weighing approximately
16  100 to 200 grams.  These emails culminated in June and July 2018 with WOOLARD
17  attempting to obtain seven kilograms of fentanyl from "Mary" for shipment into the
18  United States.  A small selection of those emails is discussed below.

19         81.     In an email dated April 5, 2016, which was forwarded from
20  bradwoolard79@gmail.com to broncosmith69@gmail.com.  This email contains a string
21  of emails between WOOLARD and mary-ytchem@hotmail.com, which investigators
22  believe to be used by WOOLARD's China based source of supply, "Mary."  In the
23  quoted portion of the message, on April 27, 2016, "Mary" wrote, "How about pure
24  fentanyl-Hcl white powder pls? It's stronger than U47700 and Fu-F."  WOOLARD wrote
25  back, "I just got some of that.  It seams to be the best product. I am interested in that."
26  "Mary" replied, "fentanyl (we call "unit 1" for safe): USD180 for 10g, USD550 for 50g,

27
28

USD1000 for 100g, USD2400 for 260g, including the shipping fee, white crystalline powder, purity:99%."  WOOLARD replied, "I need to sample unit 1."

82.     In other email communications, on June 6, 2018, "Mary" wrote, "I have checked with lab again about unit 1, lab said, this time, they will make about 7kg, do you need all pls??? pls confirm all the quantity that you need and reply me asap." WOOLARD replied, "I will but it all.  Yes 7kg 140k."  "Mary" asked WOOLARD, "OK, if you are sure and confirm, I will ask lab to make it asap.  Do you still need 100 g unit b pls??"  WOOLARD replied, "I confirm I have the cash ready for unit 1. How long will it take? Do I need unit b to fill orders while I wait??"  "Mary" replied, "Need about 15 days to make this batch of unit 1.  Order unit B or not, depend on you. Another very very important thing is: Hope you can prepare enough and different shipping addresses. If we send unit 1 to one address frequently, both of us are not safe. pls understand."  Based on the emails discussed below, investigators believe that in these emails, WOOLARD ordered seven kilograms of fentanyl from "Mary," although subsequent emails indicate that WOOLARD and "Mary" agreed that two kilograms would be, and were, shipped from this particular order.

83.     In an email dated June 27, 2018, WOOLARD sent "Please send three packages to each a week or more apart" to "Mary" with the following attachment.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> Cheron Inglis
> 20100 60th Ave W. G 36
> Lynnwood, Wa 98036
>
> Cheryl Inglis
> 1406 Lakewood Dr.
> Camano Island, Wa 98282
>
> Ed Bonto
> 1305 Uplands Dr.
> Camano Island, Wa 98282
>
> Raymond Jones
> 2405 Harrison Ave
> Everett, Wa 98201
>
> Sadie Bates
> 12118 Hwy 99 #J 402
> Everett, Wa 98204
>
> Jessie Simmons
> 729 Pecks Dr. #2
> Everett, Wa 98203
>
> Adrian Bergstrom
> 200 East Maple St. Apt 507
> Bellingham, Wa 98225

84.   On July 17, 2018, "Mary" sent an email with a subject of "Unit One" to WOOLARD.  This message was a reply to a previous string of messages between the same two email accounts.  The body of the email contained the follow list:

The 1st 100g tracking: LY422564353CN. (to Cheron Inglis)(labled [sic] BS621)

The 2nd 100g tracking: LY422564248CN. (to Cheryl Inglis)(labled BS623)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The 3rd 100g tracking: LY422564203CN. (to Raymond Jones)(labled BS626)

The 4th 100g tracking: LY428523365CN. (to Sadie Bates)(labled BS630)

The 5th 100g tracking: LY433444541CN. (to Adrian Bergstrom)(labled 704)

The 6th 100g tracking: LY433444524CN. (to Ed Banto)(labled 707)

The 7th 100g tracking: LY437968898CN. (to Raymond Jones)(labled 710)

The 8th 100g tracking: LY437968867CN. (to Cheron Inglis)(labled 713)

The 9th 100g tracking: EA363078747CN. (to Jessie Simmons)(labled 702)

The 10th 100g tracking: LY460463148CN. (to Sadie Bates)(labled 716)

85.     Law enforcement intercepted and seized the 10th parcel on the list with tracking number LY460463148CN, addressed to Sadie BATES.  The contents of this parcel were tested at the DEA laboratory, with a positive result for furanyl fentanyl and a net weight of approximately 99 grams.

86.     Based on a review of other emails between WOOLARD and "Mary," investigators believe that WOOLARD was ordering 100 and 500 grams of fentanyl from "Mary" at a time and "Mary" typically shipped the fentanyl in packages weighing 100 to 125 grams.  Further, the emails between WOOLARD and "Mary" show that WOOLARD started ordering fentanyl from her in 2016 and had repeatedly ordered from her continuing through the seizures of the four parcels referenced above.  The "recipe" provided by WOOLARD to PELAYO, found in their stored communications, states that 2.5 grams of fentanyl is used to make 12,000 pills.  Based upon this, investigators extrapolate that *each* 100-gram package of fentanyl could be used to make approximately 480,000 pills.  The investigation revealed that WOOLARD's wholesale price ranged from $5 to $12 per pill. Based on a wholesale sale price of $5 per pill, WOOLARD, PELAYO, MANTIE and their associates could have made $2.4 million per *each*

AFFIDAVIT OF SPECIAL AGENT CHENG - 30
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   100-gram package.  Further, with a street price of up to $30 per pill, *each* 100-gram

2   package of fentanyl could have generated $14.4 million worth of drug proceeds.

3   **I.    Stored Communications Between WOOLARD and SOLE**

4       87.    In early 2019, investigators obtained court authorization to search Apple

5   iCloud accounts belonging to WOOLARD, PELAYO and others. In the iCloud account

6   associated with WOOLARD's Apple ID (bradwoolard@ymail.com), investigators

7   identified messages between WOOLARD and "Andy," who was using phone number

8   425-422-3201.  As discussed above, this phone number is subscribed to SOLE's business

9   ("Superior Sole Welding and Fabr"), at a PO Box rented by SOLE's wife, and

10  investigators believe SOLE was the user of this phone.  In this section, I discuss some of

11  the messages between WOOLARD and SOLE, which I believe indicate that SOLE

12  knowingly worked with WOOLARD to launder WOOLARD's cash drug proceeds.  I

13  also discuss some additional messages between WOOLARD and PELAYO referring to

14  "Andy," whom I believe is SOLE.

15      **1.    WOOLARD tells SOLE that His Die Broke**

16      88.    On September 22, 2016, WOOLARD sent a message to SOLE which said,

17  "Money for u tomo.  My machine crashed.  The die broke it is totaled.  I ordered new but

18  I'll b down for a week."[5]  Investigators believe that WOOLARD was telling SOLE that

19  he would have money ready to give to SOLE on the following day.  Additionally, as

20  discussed above, investigators believe that WOOLARD purchased a pill press and pill

21  press dies to manufacture counterfeit oxycodone pills containing fentanyl.  As such

22  investigators believe that in this message, WOOLARD told SOLE that WOOLARD's pill

23  press die had broken and that he would not be able to press counterfeit oxycodone pills

24  for at least one week.  As SOLE apparently had no follow up questions for WOOLARD

25

26

27  [5] Consistent with this, on September 23, 2016, WOOLARD, using his bradwoolard79@gmail.com email, emailed an
individual from whom he had previously purchased dies, writing in part, "My M 30 die just broke and I'm desperate
if I send the broken die to you can you make me a new one immediately??"

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   to clarify what WOOLARD was writing about, it appears that SOLE understood what
2   WOOLARD was referring to.

3        89.    The belief that WOOLARD was discussing a broken pill press die with
4   SOLE is corroborated by messages between WOOLARD and 425-320-7547, a phone
5   believed to be used by STRAND,[6] in October 2016.  On October 13, 2016, WOOLARD
6   wrote to STRAND, "I need your email address bro" and STRAND replied, "How come?"
7   WOOLARD then said, "Machine broke.  Warrant" and "I told them I ordered it thru a
8   shipping agent.  They just need to find the order."  Investigators believe that in these
9   messages WOOLARD and STRAND were discussing one of the pill presses purchased in
10  February or September 2016, discussed in the PayPal records above.  Investigators
11  believe that WOOLARD told STRAND that this pill press broke and WOOLARD was
12  attempting to get it replaced via a warranty claim.  Investigators believe that the
13  "machine" discussed with STRAND and SOLE is the same pill press.

14      **2.**    **WOOLARD and SOLE Discuss WOOLARD's Mortgage**

15       90.    I have reviewed law enforcement reports summarizing a review of real
16  estate records regarding WOOLARD's purchase of the WOOLARD residence (9717 99th
17  Ave Ne, Arlington, WA 98223) from SOLE.  According to records obtained from
18  Snohomish County, the real property located at 9717 99th Ave Ne, Arlington, WA
19  98223, APN# 30061800301300 (the WOOLARD residence) was constructed in 1994.
20  Pursuant to a Statutory Warranty Deed dated January 13, 2010, and recorded in
21  Snohomish County, Washington on January 20, 2010, Instrument # 201001200302,
22  J. Andrew SOLE and Rita Isabelle SOLE, husband and wife, conveyed this property to
23  "Land Use LLC," a Washington Limited Liability Company.  Pursuant to a Real Estate
24  Excise Tax Affidavit dated January 13, 2010, and recorded in Snohomish County

25

26

---

27  [6] According to Western Union records, Keith STRAND sent two money orders to China in March 2017.  For those
    money orders, STRAND provided a phone number 425-320-7547, the same number that WOOLARD was
28  messaging and was saved in WOOLARD's contact list as "Keith"

1  Washington on February 2, 2010, Instrument # 201002027037, J Andrew SOLE and Rita

2  Isabelle SOLE, husband and wife, sold the WOOLARD residence to Land Use LLC,

3  listing a gross selling price of $519,000.00, and paid an excise tax in the amount of

4  $9,243.20. Pursuant to a Certificate of Formation, filed with the Washington Secretary of

5  State on December 23, 2009, Land Use LLC's sole member was Bradley P. WOOLARD.

6  Pursuant to a Deed of Trust dated January 13, 2010, and recorded in Snohomish County

7  Washington on January 20, 2010, Instrument # 201001200303, Land Use LLC,

8  encumbered the WOOLARD residence with a loan in the amount of $467,000.00, with

9  lender listed as J Andrew SOLE and Rita Isabelle SOLE, husband and wife.  Pursuant to

10  a Quit Claim Deed dated July 19, 2017, and recorded in Snohomish County Washington

11  on July 24, 2017, Instrument # 201707240186, Land Use LLC, a dissolved Washington

12  Limited Liability Company, conveyed and quick claimed their interests in the

13  WOOLARD residence to Bradley P. WOOLARD, a single man.  Pursuant to a Real

14  Estate Excise Tax Affidavit dated July 19, 2017, and recorded in Snohomish County

15  Washington on July 24, 2017, Instrument # 20170724009 conveyed the WOOLARD

16  residence to Bradley P. WOOLARD and paid an excise tax in the amount of $10.00.

17       91.     According to the Snohomish County Assessor's website, in July 2019, 9717

18  99th Ave Ne, Arlington, Washington was transferred to S4F LLC and was transferred

19  again in October 2019 to an individual who is believed to be unrelated to this

20  investigation.

21       92.     In light of the above, I believe that in the following messages, WOOLARD

22  and SOLE were discussing how much money WOOLARD owed SOLE on the

23  WOOLARD residence.  Specifically, in December 2016 and January 2017, WOOLARD

24  and SOLE exchanged the following messages.[7]

25  | WOOLARD | "Can u get me a total on my balance for the house" |
| --- | --- |

26

27  ────────────────

[7] Multiple messages between WOOLARD and SOLE in this time frame that appear unrelated to this conversation

28  are not included in this affidavit.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---|
| | "just a reminder on balance I wanna play u off this mo or next depending on amount." |
| SOLE | "She will have tonight" |
| WOOLARD | "Cool thank you.  I'm going to add a new master bed and bath next mo but wanna pay it off first.  We hate the master bathroom so I'll build a new 5 piece bath with fireplace.  It will b dope." |
| SOLE | "135,017.26 lmao." |
| WOOLARD | "Darn.  I thought it was a Lil less.  I'll get it paid in the next 90 days." |
| WOOLARD | "U got the pkg?? 100k. I'll have the 35 to u in a few days." |

93.     In these messages, investigators believe that SOLE told WOOLARD that WOOLARD owed SOLE $135,017.26 on a loan for one of WOOLARD's properties, suspected of being the WOOLARD residence.  Investigators believe that when WOOLARD asked SOLE if he got the package with $100,000 in it, WOOLARD was confirming that SOLE had received the money that PELAYO had taken to SOLE at WOOLARD's request.

94.     Investigators suspect that WOOLARD provided SOLE with cash relating to payments for the purchase of the WOOLARD residence (and, likely other properties as well).[8]  Records maintained by SOLE tending to show WOOLARD's manner and amount of payments to would constitute evidence of WOOLARD's drug trafficking and WOOLARD's and SOLE's money laundering.

---

[8] Review of WOOLARD's known bank records show that WOOLARD wrote two checks payable to SOLE, $4,700 in June of 2015 for "rent" and $8,100 in October of 2015 for "mort".

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 3.     WOOLARD and SOLE Discuss Purchasing a Property on Shoreline Drive

95.     In January and February 2017, WOOLARD and SOLE exchanged messages discussing the purchase of a property in Shoreline Drive on Camano Island Washington.  These messages are discussed below.[9]

| | |
|---|---|
| WOOLARD | "There is a beach house I wanna buy r u interested in buying it and selling it to me on a contract?? I have the cash but cannot show up at escrow with it lol" |
| WOOLARD | "Txt me your email" |
| SOLE | "snowoff@aol.com" |
| WOOLARD | "In your email box" |
| WOOLARD | "There's multiple listings so obviously look at the one on Shoreline Drive for 299,000." |
| SOLE | "Things to figure out Purchase price $275 ish How long will I carry this note What kind of payments each month will be made." |
| WOOLARD | "less then a year." |
| WOOLARD | "I need a letter or bank statement for beach purchase.  It will be bought and I trust with you as the trust owner and me as the trustee and then we will change it over to me as the sole owner after it's paid off." |
| SOLE | "The letter would be from me …… What's it supposed to say or back letter stating I have X amount of money????" |
| SOLE | "Off is going to be 275k  After paying off the house what would u put down on the beach house and what return would I get for taking cash" |

---

[9] Multiple messages between WOOLARD and SOLE that appear unrelated to the purchase of the property on Shoreline Drive are not included in this affidavit.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| WOOLARD | "I'll give you 10%???? Is that cool.  I'll put 3k Ernest money then 25k down you put up 247 get 10% in less then a year" |
| WOOLARD | "I might be more like 6mo" |
| WOOLARD | "they accepted 275" |
| SOLE | "total interest cost to you is 24,700 ??" |
| WOOLARD | "Yup" |
| WOOLARD | "I think that is super good money for your end.  How do you feel??" |
| WOOLARD | "it's double bank money" |
| WOOLARD | "all 100$ bills no small shit" |
| SOLE | "talking with wife" |
| SOLE | "but probably" |
| SOLE | "yes" |
| WOOLARD | "I need you to sign the trust docs tye gave you.  Need to use u as grantor and trustee and put in the date and then give me an address that the escrow instructions can be sent to do you what to go to your house or to your office?  I need to get that from so I can deliver it to escrow they need a few days to go over it thank you." |

96.     Based on these messages, investigators believe that WOOLARD was purchasing the Shoreline Drive property through SOLE because WOOLARD had a significant amount of cash that he could not legitimately document the source of.  As such, WOOLARD needed SOLE to purchase the property using SOLE's legitimately derived money so that WOOLARD could make payments to SOLE using WOOLARD's

AFFIDAVIT OF SPECIAL AGENT CHENG - 36
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   cash drug proceeds, which was hundred-dollar bills, not small denomination bills.[10]  Of

2   note, SOLE understood not only that WOOLARD would pay SOLE in cash, but SOLE

3   also inquired what rate of return SOLE would receive for taking WOOLARD's cash.

4   WOOLARD told SOLE it would be "double bank money."

5       97.     During the search of WOOLARD's residence in Arlington, investigators

6   found a Declaration of Trust.  This document established Trust 040 with J. Andrew

7   SOLE as the Trustor and Trustee.  This document lists a mailing address for J. Andrew

8   SOLE of PO Box 1589, Marysville, Washington 98270.  As discussed above, this address

9   is used by SOLE in multiple business registrations and is the address listed on his phone

10  subscriber record. The listed beneficiary is Bradley P WOOLARD with a 100% interest.

11  This document placed Lots 4 and 4A, Plat of Tyee Beach, Division No. 1, according to

12  the plat thereof recorded in Volume 3 of Plats, page 48, records of Island County,

13  Washington, which is situated in the County of Island, State of Washington, under the

14  control of Trust 040.  According to a search of the Island County Assessor's Office's

15  website this parcel has the address 3208 Shoreline Drive, Camano Island, Washington

16  and was purchased by "Trust 040" on March 16, 2017.  As of April 13, 2021, Trust 040 is

17  still the owner of this property.  Investigators believe that 3208 Shoreline Drive is the

18  property discussed by WOOLARD and SOLE in the messages detailed above and in

19  numerous messages with MANTIE, BRUNS, PELAYO, STRAND and others.

20      98.     Investigators believe that WOOLARD convinced SOLE to purchase the

21  property on Shoreline Drive on Camano Island on WOOLARD's behalf, under Trust 040,

22  because WOOLARD had a large quantity of illegitimately obtained cash that he could

23  not document the source of.  Hence, WOOLARD utilized SOLE to purchase the property

24  in the name of "Trust 040," and paid the cash to SOLE.

25

26

27  [10] On a later occasion, on October 26, 2017, WOOLARD messaged SOLE, "I got money for you."  SOLE replied, "I
    am here."  WOOLARD replied, "U are here.  I got like 15 large and 15 in 20s want me to wait to swap it or u take it

28  now??"  SOLE replied, "Don't care what ever u want to do."  WOOLARD replied, "See u in a bit."

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

99.     I have reviewed a law enforcement report discussing documents from Premier Title of Island County, in reference to the purchase of 3208 Shoreline Drive, Camano Island, WA 98282, by Trust 040.  The report indicates that two cashier's checks were used to fund the escrow account, namely, Heritage Bank, Olympia Washington, Check # 125093, dated February 14, 2017, for $3,000.00, remitter J A. SOLE, and Heritage Bank, Olympia Washington, Check # 127742, dated March 14, 2017, for $276,602.95, remitter J A. SOLE.  According to the Disbursement Worksheet there was a $3,000.00 dollar adjustment to the $276,602.95 making the total funding from both deposits $276,602.95.  Records obtained from Heritage Bank NW show that SOLE purchased cashier's check #127742 using funds in his Heritage Bank NW account ending *4377.

### 4.     SOLE Provides WOOLARD with Pay Stubs (2017)

100.     Investigators obtained records for a Capitol One loan for WOOLARD's 2017 GMC Sierra.  The records show that on March 3, 2017, Bradley Woolard purchased a 2017 GMC Sierra 2500 from Northwest Chevrolet of Bellingham for $76,171.26. Woolard traded in a 2009 Z6R Yama and 2010 Ford F0150, made a $30,000 down payment, and financed the remaining amount with Capital One Auto Finance.  Wells Fargo Bank records show that WOOLARD and BRUNS had a joint account at Wells Fargo (account ending *3725).  Review of those records show that WOOLARD paid the following funds to NW Chevrolet from this joint bank account:

| Date | Item | Amount | Account |
|------|------|--------|---------|
| 3/6/2017 | Check 1001 | $10,500 | WF *3725 |
| 3/9/2017 | Check 1002 | $10,000 | WF *3725 |
| 3/9/2017 | Debit | $5,000 | WF *3725 |
| 3/24/2017 | Returned debit | ($5,000) | WF *3725 |

AFFIDAVIT OF SPECIAL AGENT CHENG - 38
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

101.   On the credit application provided by Capital One, WOOLARD's employment is stated to be a full-time welder at Sole Welding,[11] tel. 425-422-3201, for three months, with a previous employer of Woolard Contracting. WOOLARD's stated monthly income was $5,000 and his residence is stated to be owned outright. Payments to Capital One were made from WOOLARD and BRUNS' Wells Fargo checking account ***3725.

102.   Review of WOOLARD's Wells Fargo Bank records show WOOLARD received three checks from "Soca Inc dba Soca Distribution"[12] for the pay period December 2016 through February 2017. Despite the paychecks purportedly representing three months of payroll, the checks were sequentially numbered:



[11] Bank records show that Woolard gave Andy Sole two payments: $4,700 in June of 2015 for "rent" and $8,100 in October of 2015 for *mort". Woolard had purchased 9717 99th Avenue NE, Arlington, WA and obtained a loan from the sellers (Sole) in 2010.
[12] 405 172nd St NE #5-177, Arlington, WA.

AFFIDAVIT OF SPECIAL AGENT CHENG - 39
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

103.    Review of WOOLARD's stored communications revealed that in December 2016, WOOLARD and SOLE exchanged a few messages in which SOLE asked WOOLARD for his full name and Social Security Number so that SOLE would be able to add WOOLARD to the payroll of SOLE's company.  Investigators believe that these messages pertain to WOOLARD's purchase of the GMC Sierra:

| SOLE | "Yep cool I will get u a w4 to fill out" |
| WOOLARD | "Just claim 0 I'll get a big return when I file" |
| SOLE | "What's your SS# and full name" |

AFFIDAVIT OF SPECIAL AGENT CHENG - 40
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| WOOLARD | \*\*\*-\*\*-\*\*\*\*[13]<br><br>"Bradley Pete WOOLARD" |
| WOOLARD | "I have money for you.  Do u have a check for me?" |

104.   In February 2017, WOOLARD exchanged multiple text messages with the user of 425-750-5151.  In those messages, WOOLARD appeared to be discussing his efforts to purchase a truck:

| 425-750-5151 | "Would you have pay stubs for your income that show you make the 60k a year for sure because the bank is gonna want to see them" |
| WOOLARD | "I got pay stubs 5k a month." |
| 425-750-5151 | "Okay cool! How long have you been at your address?" |
| WOOLARD | "I been in my house ten years I just paid it off worth 650k." |
| 425-750-5151 | "nice!" |
| 425-750-5151 | "wht the name of your work?" |
| WOOLARD | "Sole welding but they use another name on the checks.  I'll have to look but say sole welding for now that's where I go." |
| 425-750-5151 | "Ok" |
| WOOLARD | "Soca Inc is what my check stub says I work out of the sole welding building" |
| 425-750-5151 | "Okay" |
| 425-750-5151 | "The bank want only finance up 30k unless you have someone to co sign the loan with you" |

---

[13] WOOLARD's full social security number was provided in the text messages.

AFFIDAVIT OF SPECIAL AGENT CHENG - 41
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| WOOLARD | "So 30+ 25 is 55 can't get much new for that.  I have more money to put down but don't want the Irs form filed. Maybe I pay more on down payment but a day or two later so it's a separate payment" |
|---|---|

105.    The conversation culminated on February 28, 2017 with WOOLARD and the user of 425-750-5151, with the two individuals agreeing to meet the following day to work out a deal for the vehicle.  Based on my training and experience, I know that the IRS form that WOOLARD is referring to is a Form 8300 which businesses are required to file for cash transactions in excess of $10,000.

106.    According to a search of the Washington State Secretary of State's website, SOCA Inc, has a formation date of September 9, 2016, has a listed expiration date of 9/30/2017, listed governors of Samantha and Carl Caskey, and listed a street address of 8804 78th Drive Northeast, Marysville, Washington.

107.    On March 1, 2017, WOOLARD texted SOLE, "I'm going to trade in my truck so if I could get those stubs in a hr or so that be great."  On March 1, 2017, SOLE sent the following images to WOOLARD.

AFFIDAVIT OF SPECIAL AGENT CHENG - 42
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Employee Pay Stub**          Check number: 12715          Pay Period: 01/01/2017 - 01/31/2017          Pay Date: 02/01/2017

**Employee**                                              SSN

Bradley P Woolard, 9717 99th NE, Arlington, WA 98223          ***-**-8565

| Earnings and Hours | Qty | Rate | Current | YTD Amount | Paid Time Off | Earned | YTD Used | Available |
|---|---|---|---|---|---|---|---|---|
| Salary | 160:00 | | 5,000.00 | 10,000.00 | Sick | 0:00 | | 0:00 |
| | | | | | Vacation | 0:00 | | 0:00 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Medicare Employee Addl Tax | 0.00 | 0.00 |
| Federal Withholding | -847.00 | -1,698.00 |
| Social Security Employee | -310.00 | -620.00 |
| Medicare Employee | -72.50 | -145.00 |
| | -1,229.50 | -2,463.00 |
| **Net Pay** | **3,770.50** | **7,537.00** |

AFFIDAVIT OF SPECIAL AGENT CHENG - 43
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Employee Pay Stub | | Check number: 12714 | | Pay Period: 02/01/2017 - 02/28/2017 | | Pay Date: 03/01/2017 |
|---|---|---|---|---|---|---|
| Employee | | | | SSN | Status (Fed/State) | Allowances/Extra |
| Bradley P Woolard, 9717 99th NE, Arlington, WA 98223 | | | | ***.**-8565 | Single | Fed-0/0/WA-0 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Salary | 160:00 | | 5,000.00 | 15,000.00 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Medicare Employee Addl Tax | 0.00 | 0.00 |
| Federal Withholding | -847.00 | -2,545.00 |
| Social Security Employee | -310.00 | -930.00 |
| Medicare Employee | -72.50 | -217.50 |
| | -1,229.50 | -3,692.50 |
| **Net Pay** | **3,770.50** | **11,307.50** |

108.    The above images that SOLE texted to WOOLARD depict what appear to be pay stubs for WOOLARD for the pay periods of January 1, 2017 through January 31, 2017 and February 1, 2017 and February 28, 2017 in which WOOLARD earned $5,000 per pay period.  However, the paystubs do not list an employer on them.

109.    Investigators obtained records from the Washington State Employment Security Department for Superior Sole Welding and Fabrication.  According to those records, during the first quarter 2017, January 1, 2017 through March 31, 2017, Superior Sole Welding & Fabrication listed approximately 40 employees during that pay period and WOOLARD was not listed as a paid employee.  Additionally, these records covered

AFFIDAVIT OF SPECIAL AGENT CHENG - 44
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   quarter one 2014 through quarter four 2018 and WOOLARD was not listed as an
2   employee at any time.

3       110.    Investigators obtained records from the Washington State Employment
4   Security Department for Bradley WOOLARD for the period from January 1, 2015
5   through November 2, 2018.  These records show that WOOLARD had employment from
6   Apple Equities in the first, second and third quarters 2016.  No other employment history
7   was shown for WOOLARD in these records.

8       111.    Investigators also obtained records from the IRS for WOOLARD which
9   indicated that the IRS has no tax returns filed for Bradley WOOLARD for tax years
10  2015, 2016, 2017 and 2018.  Based on a lack of records returned by IRS, investigators
11  believe that WOOLARD did not file federal income taxes for those periods.

12      112.    The IRS recommends[14] that small business maintain records related to their
13  tax return filings for a period up to seven years depending on specific circumstances.
14  Additionally, the IRS instructs small businesses to "keep employment tax records for at
15  least 4 years after the date that the tax becomes due or is paid, whichever is later."  Per
16  the IRS recommendations and the pay stubs attached above, which indicate that
17  WOOLARD had federal withholdings, Social Security and Medicare withheld from his
18  pay check indicating that WOOLARD's employer Sole Welding, should still maintain
19  records relating to WOOLARD's employment at Sole Welding.

20      113.    Based on this review of these records, investigators believe that the pay
21  stubs provided to WOOLARD by SOLE were fabricated by SOLE to facilitate
22  WOOLARD's purchase of the GMC pickup truck and to help WOOLARD conceal the
23  illicit source of his money.

24
25
26
27

---

[14] Based on a review of the IRS website, https://www.irs.gov/businesses/small-businesses-self-employed/how-long-should-i-keep-records, on March 25, 2021.

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 45
USAO #2020R01243

### 5.   SOLE Asks WOOLARD about Heroin (2018)

114.   In June 2018, SOLE reached out to WOOLARD with a question about heroin:

| SOLE | "Bro a buddy of mine I believe is on heroin this don't look like pot your thoughts" |
|---|---|
| SOLE | "Nasty burnt smell not like pot at all." |
| WOOLARD | "Not sure maybe resin.  People don't smoke brown like that they use tin foil" |
| SOLE | "He might be getting high by smoking a bit of heroin but my buddy told me only way to equal 6 to 12 30 oxys is to inject so he is prob still eating pills" |

115.   Of note, during a proffer in March 2021, the CD stated that SOLE had previously obtained marijuana from WOOLARD.  During the searches of WOOLARD's residence, investigators found evidence of prior marijuana grows (e.g., equipment associated with growing marijuana) in two outbuildings on the property.  Additionally, during searches of emails and messages pursuant to search warrants, investigators discovered multiple messages indicating that WOOLARD (and other coconspirators) had been involved in unlicensed marijuana grows.

### 6.   WOOLARD and SOLE Continue to Discuss Business Opportunities

116.   WOOLARD and SOLE's text message conversations continue, frequently discussing real estate and other business opportunities.  In late June and July 2018, WOOLARD and SOLE exchanged the following messages.

| WOOLARD | "These little houses are quick ones you know I'll have it done in like three weeks so I got to buy a few to stay busy.  But I'll make 39k ea so not bad." |
|---|---|
| WOOLARD | "Buying a house 350k need a check Monday." |

| WOOLARD | "Can we do that?" |
| SOLE | "Let me check how much cash down" |
| WOOLARD | "As much as u want I can put down" |
| SOLE | "will they take any cash" |
| WOOLARD | "No it's a estate sale but I got 50k inbank" |
| SOLE | "What's the deal flip how long how much" |
| WOOLARD | "It will be a fast flip like a month then however long to sell" |
| WOOLARD | "The guy with the Camano house I bought at trustee sale and lost.  He filed bankruptcy 5 min before sale so it was reversed.  However he wants to sell.  I'll save 9300$ in fees and shit if I buy straight from him. He wants to sell 250k he owes 170. I'll pay him cash on the rest. R u interested in loaning the 170? I bought 2 houses this week from vestus but they are expensive" |
| SOLE | "Probably let u know in am what's the time frame on flip" |
| WOOLARD | "He needs a month rent back and I'll refi or pay it off I'll keep for rental" |
| WOOLARD | "I got the cash if u want to just get paid off with interest" |
| WOOLARD | "I'm sitting on 1.7 mil plus I'll have 600k in bank next month" |

117.    As discussed above, in July and August 2018, investigators seized approximately $1.1 million in US currency from WOOLARD's residence.  Based on the June and July 2018 messages, between SOLE and WOOLARD where WOOLARD said that he had $1.7 million and the estimated profits discussed above, investigators suspect that a quantity of WOOLARD's drug proceeds remain unaccounted for.

118.    Based on the above messages, investigators believe that SOLE was assisting WOOLARD laundering his drug proceeds by providing legitimate funding to WOOLARD for the purchase of properties to flip which WOOLARD then sells or keeps

and rents out to generate legitimate income.  Based in part on the lack of reported income for WOOLARD, investigators believe that the $1.7 million discussed by WOOLARD represents WOOLARD's cash drug proceeds from the sale of counterfeit oxycodone pills.  Further, investigators believe that SOLE was assisting WOOLARD in laundering cash drug proceeds using real estate.

### 7.   WOOLARD and SOLE Discuss Meeting at the Target Location

119.   On November 8, 2016, WOOLARD and SOLE exchanged messages about meeting the following day so that WOOLARD could bring something to SOLE.  On November 9, 2016, WOOLARD wrote, "R u at shop??" and SOLE replied, "Yep." Investigators believe WOOLARD and SOLE were discussing meeting up at the **Target Location**.

120.   Other messages indicate that WOOLARD and SOLE met at SOLE's office (**Target Location)** on other occasions as well.  On March 1, 2017, the two discussed meeting at SOLE's office; during the exchange, WOOLARD texted, "I'm in your office."

121.   Based on a review of WOOLARD's messages with SOLE, investigators believe that WOOLARD and SOLE met several times in late 2016 and early 2017, each time at SOLE's "office" or "shop," which investigators believe to the Sole Welding building or the **Target Location**.  Investigators believe that WOOLARD met SOLE primarily, if not solely, at the **Target Location**.  Their messages indicate that WOOLARD and SOLE discussed meeting as recently as July 18, 2018, approximately 10 days prior to the search warrant at WOOLARD's residence; however, a location was not discussed.

### 8.   WOOLARD's and SOLE's Communications after the July 28, 2018 Search

122.   WOOLARD was not at the WOOLARD residence when the search warrants were executed.  WOOLARD's whereabouts were unknown until September 1, 2018, when he arrived at the at the San Ysidro Port of Entry, California, from Mexico. WOOLARD was referred to secondary inspection.  WOOLARD was arrested that same

AFFIDAVIT OF SPECIAL AGENT CHENG - 48
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  day pursuant to an arrest warrant and complaint sworn in the Western District of

2  Washington, and WOOLARD has remained in custody since that time.

3      123.   WOOLARD had a cell phone with him when he attempted to enter the

4  United States.  The cell phone was seized and subsequently searched pursuant to a

5  warrant authorized in the Western District of Washington.[15]  The number of the cell

6  phone was 1-425-232-7999.  The number 425-422-3201 was stored in the contacts as the

7  number for "Andy."

8      Based on a review of the messages between WOOLARD and SOLE, investigators

9  believe that SOLE was aware of WOOLARD's criminal activity.  For example, the

10  messages indicated that SOLE helped WOOLARD tow BRUNS's Tahoe to hide it from

11  law enforcement and offered to do the same for an RV of WOOLARD's.  SOLE and

12  WOOLARD also discussed WOOLARD's property at "3208 Shoreline Dr Camano Is

13  wa," which is WOOLARD's property discussed above.  SOLE offered to help

14  WOOLARD with various affairs related to the Shoreline Drive property, to include

15  water, insurance and taxes.  WOOLARD also told SOLE, "U got copy of trust u can get

16  all info."  Based on that message and the trust records discussed above, investigators

17  believe SOLE is indeed the user of 425-422-3201.  SOLE also told WOOLARD, "make

18  sure shawna knows she can contact me also."  Investigators know Shawna to be

19  WOOLARD's wife at the time, Shawna BRUNS.  This message and others indicate to

20  investigators that SOLE was a trusted confidante of WOOLARD.  Additionally, SOLE's

21  willingness to assist WOOLARD in thwarting law enforcement's efforts to locate

22  WOOLARD's assets, the Tahoe and RV, indicates that SOLE was familiar with

23  WOOLARD's criminal activities and sources of WOOLARD's cash discussed in the

24  messages above.

25

26

27  [15] During an initial review of the data extracted from WOOLARD's phone, I realized that it appeared to contain
communications between WOOLARD and an attorney and stopped my review.  The potentially privileged

28  communications were redacted, and I am relying upon the post-privilege reviewed data herein.

AFFIDAVIT OF SPECIAL AGENT CHENG - 49
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## J.     Knowledge Based on Training and Experience

124.    Based on my training and experience, and my discussions with other experienced officers and agents involved in drug and money laundering investigations, I know the following:

125.    Drug trafficking is a cash business.  Indeed, WOOLARD's trafficking in counterfeit fentanyl-laced oxycodone pills was extremely lucrative, as the approximately $1.1 million in cash seized from the WOOLARD residence reflects.  In order to escape notice from authorities for using unexplained income, or hide excessive cash from illegal activities, traffickers either keep large quantities of cash at home or other secure locations such as a vehicles and storage locker, or convert the cash into other valuable assets, such as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth. Records of such conversions are often stored where a trafficker lives.

126.    Drug traffickers often have false identification documents and identification documents in the names of others to conceal their identities.  Drug traffickers very often place assets in names other than their own, or use fictitious names and identification, to conceal their ownership of these assets and their acquisition using drug proceeds, and to avoid detection and, potentially, seizure of these assets acquired with drug trafficking proceeds or used to facilitate drug trafficking. Even though these assets are in other persons' names, the traffickers actually own and continue to use these assets and exercise dominion and control over them.  When a trafficker enlists another individuals to put the trafficker's asset in the trafficker's name, and that other individual knows that the asset was purchased with the trafficker's drug proceeds, the transaction to acquire the asset can constitute money laundering.  Furthermore, the documents retained relating to the initial acquisition of the asset, or to repayment of a loan or mortgage with proceeds, can constitute evidence of money laundering.  As discussed above, investigators believe SOLE assisted WOOLARD by knowingly laundering WOOLARD's cash drug proceeds through real estate transactions.  Records relating to those transactions – *i.e.*, the purchase

of 3208 Shoreline Drive, Camano Island, or 14831 Three Lakes Road, Snohomish, as well as to payment of the mortgage on these properties as well as payment of the mortgage on the WOOLARD residence – would constitute evidence of WOOLARD's drug trafficking as well as WOOLARD's and SOLE's money laundering.  As noted above, as recently as April 13, 2021, "Trust 040" is still listed as the owner of 3208 Shoreline Drive, Camano Island, Washington.

127.    Money launderers often have banking records to include but not limited to, deposit or withdrawal slips, bank statements, checks, or money orders.  Some of these banking records may not be in their own name. Money launderers often have several accounts documented in some form, or instructions detailing how to handle each respective account.  For example, they may have a list of accounts belonging to several different people with instructions for how much to deposit or withdraw from each and often maintain this information for long periods of time in their residences or safe deposit boxes.

128.    Money launderers often have records or evidence related to how the proceeds were spent or concealed and often maintain this information for long periods of time in their residences, and businesses.  Evidence may include jewelry and/or vehicles, as well as the contents of storage lockers, safe deposit boxes or bank accounts.

129.    The use of multiple accounts, and the commingling of illicit funds with legitimate funds in particular, is often part of the plan to conceal the illegal activity or may be part of the overall integration mechanism by which the illicit funds are made to appear as part of the legitimate income so that only a small portion of or even none of the funds from an account are seized.

130.    It is a common technique for money launderers to use casinos to launder their illicit proceeds.  Money launderers retain the paperwork provided by casinos with respect to cash-out/winnings, in order to disguise their illicit proceeds as gambling winnings.

AFFIDAVIT OF SPECIAL AGENT CHENG - 51
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

131.    Money launderers maintain and tend to retain accounts or records of money laundering activities, including documents related to loans made, employment records, trust documents and similar records of evidentiary value.  These items are generally kept in locations where money launderers believe their property is secure and will remain undetected from law enforcement, such as inside their residences, businesses, vehicles and storage lockers.

132.    Money launderers commonly maintain addresses, vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization and it is common to find drug traffickers keeping records of said associates in cellular telephones and other electronic devices.  Traffickers almost always maintain cellular telephones for ready access to their clientele and to maintain their ongoing narcotics business.

133.    Money launderers maintain evidence of their criminal activity at locations that are convenient to them, including their residences and businesses.  This evidence often includes financial records, records of property and vehicle ownership, records of property rented, records of post office boxes used to ship and receive contraband and currency, records of other storage facilities used to hide drugs or currency, and other documentary evidence relating to commission of, and proceeds from, their crimes.

134.    During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings which show ownership, dominion, and control of the premises, vehicles, and/or storage units.

135.    Drug dealers and money launderers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute

AFFIDAVIT OF SPECIAL AGENT CHENG - 52
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  drugs. Third, they can be passed between members of a drug conspiracy to allow

2  substitution when one member leaves the area temporarily. I also know that it is common

3  for drug traffickers to retain in their possession phones that they previously used, but

4  have discontinued actively using, for their drug trafficking business. Based on my

5  training and experience, the data maintained in a cellular telephone used by a drug dealer

6  or money launderer can constitute evidence of a crime or crimes. This includes the

7  following:

8       136.    The assigned number to the cellular telephone (known as the mobile

9  directory number or MDN), and the identifying telephone serial number (Electronic

10  Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile

11  Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are

12  important evidence because they reveal the service provider, allow us to obtain subscriber

13  information, and uniquely identify the telephone. This information can be used to obtain

14  toll records, to identify contacts by this telephone with other cellular telephones used by

15  co-conspirators, to identify other telephones used by the same subscriber or purchased as

16  part of a package, and to confirm if the telephone was contacted by a cooperating source

17  or was intercepted on a wiretap here or in another district.

18       137.    The stored list of recent received calls and sent calls is important evidence.

19  It identifies telephones recently in contact with the telephone user. This is valuable

20  information in a drug investigation because it will identify telephones used by other

21  members of the organization, such as suppliers, distributors, and customers, and it

22  confirms the date and time of contacts. If the user is under surveillance, it identifies what

23  number he called during or around the time of a drug transaction or surveilled meeting.

24  Even if a contact involves a telephone user not part of the conspiracy, the information is

25  helpful (and thus is evidence) because it leads to friends and associates of the user who

26  can identify the user, help locate the user, and provide information about the user.

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 53
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

138.     Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug and money laundering associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

139.     Photographs and videos on a cellular telephone are evidence because they help identify the user of the device, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Photos and videos can identify assets purchased with laundered funds and documents relating to the money laundering scheme. With respect to drug traffickers' phones, the photos and videos also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs.  Digital photos often have embedded "geocode" information within them.  Geocode information is typically the longitude and latitude where the photo was taken.  Showing where the photo was taken can have evidentiary value.  This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

140.     Stored address records are important evidence because they show the device user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

141.     It is common for drug traffickers and money launderers to use encrypted means of communication, such as WhatsApp, Signal, Wickr, and Telegram, to attempt to avoid detection by law enforcement.  It is common for drug traffickers and money launderers to install and use these apps on their phones in order to make encrypted calls and send encrypted messages.

142.     Based upon my training and experience, and my discussions with other experienced law enforcement officers, I know that drug traffickers and money launderers

AFFIDAVIT OF SPECIAL AGENT CHENG - 54
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

will often use multiple cell phones and change their cell phone numbers and cell phones in an attempt to thwart detection by law enforcement.  I also know that it is common for these individuals to keep their old cell phones in places they believe to be secure, such as their residences and businesses.  For example, although the searches of the WOOLARD residence were in July and August of 2018, investigators recovered cell phones during search of PELAYO's residence, vehicles and person in May of 2019, and during search of MANTIE's residence in October 2019, that contained evidence of the drug trafficking conspiracy.

143.    As discussed above, investigators have already identified communications between WOOLARD and SOLE that indicate that SOLE was knowingly laundering WOOLARD's cash drug proceeds and identified photos of the paystubs that SOLE texted to WOOLARD.  These communications were identified through review of WOOLARD's seized devices (cell phone and iPad) and iCloud account.  Notwithstanding the passage of time since the searches of the WOOLARD residence and other warrants executed during this investigation, investigators believe evidence of WOOLARD's and SOLE's money laundering activities would remain stored in SOLE's cell phones.

## V.    CONCLUSION

144.    Based on the information set forth herein, there is probable cause to search the above described **Target Location,** as further described in Attachment A, for evidence, fruits and instrumentalities, as further described in Attachment B, of crimes committed by WOOLARD, SOLE, and others discussed in this affidavit, specifically,

//

//

//

AFFIDAVIT OF SPECIAL AGENT CHENG - 55
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   *Distribution of Controlled Substances*, in violation of 21 U.S.C. § 841; *Conspiracy to*

2   *Distribute Controlled Substances*, in violation of 21 U.S.C. §§ 841 and 846; and *Money*

3   *Laundering and Conspiracy to Launder Money*, in violation of 18 U.S.C. §§1956 and

4   1957.

5

6

7

                                 Joseph Cheng

8                                      Special Agent

9                                      Drug Enforcement Administration

10

11         The above-named agent provided a sworn statement attesting to the truth of the

12   contents of the foregoing affidavit on 19th day of April, 2021.

13

14

15                                      Hon. Paula L. McCandlis

                                   United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT CHENG - 56
USAO #2020R01243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## <u>Attachment A</u>

## Location to be Searched

**Target Location: 7**402 44th Avenue Northeast, Marysville, Washington is a commercial building with a business location of Superior Sole Welding & Fabrication Inc.  The numbers 7402 and a white sign with "Superior Sole Welding and Manufacturing Co. Inc" are displayed on the side of the building facing 44th Avenue Northeast.

**<u>Attachment B</u>**

**List of Items to be Searched for and Seized**

This warrant authorizes the government to search for the following items:

Evidence, fruits, and/or instrumentalities of the commission of the following crimes: *Distribution of Controlled Substances*, in violation of Title 21, United States Code, Section 841(a)(1); *Conspiracy to Distribute Controlled Substances*, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and *Money Laundering and Conspiracy to Launder Mone*y, in violation of Title 18, United States Code, Sections 1956 and 1957:

1.      Correspondence with Bradley Woolard regarding real property and investing in real property.  This includes, but is not limited to, the real properties located at 9717 99th Ave NE, Arlington, Washington; 3208 Shoreline Drive, Camano Island, Washington; and 14831 Three Lakes Road, Snohomish, Washington.

2.      Any and all documents and records pertaining to the real property located at 9717 99th Ave NE, Arlington, Washington; 3208 Shoreline Drive, Camano Island, Washington; and 14831 Three Lakes Road, Snohomish, Washington.  This includes copies of deeds, contracts, escrow documents, mortgage documents, rental documents, photographs/videos and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises; , documents and records pertaining to trusts (including "Trust 040") and real properties held in trusts; and receipts and documents pertaining to mortgage/rental payments made and received, including receipts for any and all payments, including cash payments, from Bradley Woolard and/or Shawna Bruns

3.      A list of employees of Superior Sole Welding & Fabrication, Inc. and SOCA Inc. (d/b/a Soca Distribution) for the time period 2016 through 2019.

4.      Copies of all checks made payable to Bradley Woolard, drawn on any/all bank accounts held in the name of J. Andrew Sole, Superior Sole Welding & Fabrication Inc., or SOCA Inc. (d/b/a Soca Distribution).

5.      Tax records related to Bradley Woolard, including W-4 forms and other tax documents created or maintained indicating Bradley Woolard's employment, if any, with Superior Sole Welding & Fabrication, Inc. and/or SOCA Inc. (d/b/a Soca Distribution).

6.      Plastic boxes, whether numbered or numbered, that are similar in appearance to the following, and any cash/US currency contained in such boxes:





7.      Indicia of occupancy, residency, and/or ownership of the **Target Location** (**7**402 44th Avenue Northeast, Marysville, Washington) including, but not limited to, rental records or payment receipts, leases, mortgage statements, and other documents.

8.      Evidence of Storage Unit Rental or Access:  rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units.

9.      Evidence of Property Ownership including in the names Bradley Woolard, Shawna Bruns, and Trust 040, to include registration information, ownership documents, or other evidence of ownership of property including, but not limited to vehicles, vessels, boats, RVs, and personal property; , and any other evidence of unexplained wealth.

10.      Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash  These documents are to include applications, payment records, money orders, frequent customer cards, etc.

11.      Evidence pertaining to ownership or control over Superior Sole Welding & Fabrication, Inc., SOCA Inc., and Trust 040.

12.      Evidence identifying employees and payroll of Superior Sole Welding & Fabrication, Inc. and SOCA Inc. during the years 2015 through 2019.

13.      Correspondence, papers, records, and other communications to, from, or regarding Bradley Woolard, Shawna Bruns, and Trust 040.

14.      Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

15.      Any documents with the names Bradley Woolard, Woolard, Shawna Bruns, or Trust 040.

**16.      THIS SEARCH WARRANT DOES NOT AUTHORIZE THE SEARCH AND SEIZURE OF CELL PHONES ON THE PERSONS OF ANY EMPLOYEES OR CUSTOMERS WHO MAY BE PRESENT AT THE TARGET LOCATION WHEN THIS WARRANT IS EXECUTED.**

17.      **Except as provided in paragraph 16,** cellular telephones and other communications devices including Blackberries found at the **Target Location**, including on the person of J. Andrew Sole, may be searched for the following items:
        a.      Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);
        b.      Stored list of recent received, sent, and missed calls;

c. Stored contact information;

d. Stored photographs and/or videos of narcotics, currency, paystubs, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs/videos; and

e. Stored text messages, stored emails and internet browsing history and information including stored communications over the internet.  This includes stored communications in encrypted messaging apps such as WhatsApp, Telegram, Signal, and Wickr.